1  **WO**

2

3

4

5

6

7                     IN THE UNITED STATES DISTRICT COURT

8                        FOR THE DISTRICT OF ARIZONA

9

10

11

12  James A. Monroe and Kimberly   )
    M. Pirtle,                     )
13                                 )
             Plaintiffs            )      No. CIV 2:08-CV-0018-PHX-RCB
14                                 )
             vs.                   )         O R D E R
15                                 )
    James L. Gagan, Jane Doe       )
16  Gagan, Ross Miljenovich,       )
    John Does I through X, and     )
17  Jane Does I through X,         )
                                   )
18           Defendants            )
    _____)
19                                 )
    Ross Miljenovich,              )
20                                 )
             Defendant-Cross-      )
21               Claimant          )
                                   )
22                                 )
             vs.                   )
23                                 )
    James L. Gagan and Jane Doe    )
24  Gagan, John and Jane Does I    )
    through 10 and 11 through 20,  )
25  XYZ Corporations 1 through 10,)
    ABC Partnerships 1 through 10,)
26  and Black and White            )
    Unincorporated Associations 1  )
27  through 10,                    )
                                   )
28           Cross-Defendants      )
    _____)

1    Currently pending before the court are motions to remand

2    pursuant to 28 U.S.C. § 1447(c) by plaintiffs James A. Monroe and

3    Kimberley Monroe Clark[1] (doc. 7), and by defendant/cross-claimant

4    Ross Miljenovich (doc. 10).   The moving parties posit that this

5    action must be remanded to Arizona Superior Court, Maricopa County

6    because this court lacks subject matter jurisdiction.

7                            ***Background***

8       This is the latest round in a dispute between Messrs. Monroe

9    and Gagan, originating in a business venture which began more than

10   a quarter of a century ago, in 1982.   Eventually, Mr. Gagan

11   obtained a judgment in Indiana of roughly $1.7 million dollars

12   against Mr. Monroe, among others.   Thereafter, for more than a

13   decade this court presided over the related action of Gagan v.

14   Sharar, 2:99-cv-1427-RCB ("Gagan"), wherein Mr. Gagan was seeking

15   to enforce that Indiana judgment.   The court assumes familiarity

16   with all prior related proceedings.   An abbreviated version of this

17   protracted dispute is set forth below as necessary to frame the

18   issues which these remand motions raise.

19      As part of the enforcement efforts in Gagan, eventually the

20   United States Marshal conducted a sale of Mr. Monroe's real

21   property located at 9795 East Caron Street, Scottsdale, Arizona

22   85258.   Gagan, (doc. 347).   At the time of that sale Mr. Monroe's

23   daughter, Kimberly Monroe Clark, was residing there, but Mr. Monroe

24   was not.   See Amended Co. (doc. 5) at 3, ¶ 4.   The proceeds of that

25   sale were to be applied toward the satisfaction of the Indiana

26

27       [1]      Since the commencement of this action, Ms. Monroe Clark's marital
28   status has changed so she no longer goes by Kimberly M. Pirtle, as the caption
     indicates.

judgment.  Gagan, (doc. 341) at 1.  Defendant James Gagan was the
highest bidder at that sale, bidding $560,000.00.  Id. (doc. 341)
at 2.  On May 15, 2007, a "United States Marshal's Deed" was issued
to Mr. Gagan.  Id. (doc. 347).  Thereafter, "[i]n June, 2007, [Mr.]
Gagan entered into a contract with . . . [Mr.] Miljenovich to sell
to him for $750,000 whatever right, title and interest the United
States Marshal's Deed had vested in Gagan." Not. of Removal (doc.
1) at 3, ¶ 4.

     Unwilling to concede defeat, on August 31, 2007, Mr. Monroe
and his daughter, Kimberley Monroe Clark, filed the present action
against Messrs. Gagan and Miljenovich and numerous fictitious
individuals.  Mr. Monroe now alleges that despite the Marshal's
sale, he "is the lawful owner of a fee simple estate" in the
subject property.  Not. of Rem. (doc. 1), exh. A thereto (doc. 1-4)
at 2, ¶2.  Mr. Monroe further alleges that the United States
Marshal, "act[ing] upon the advice and instructions of Defendants
Gagan[,]" refused to pay Mr. Monroe the $150,000.00 statutory
homestead exemption.  Id. at 5, ¶ 17.  The failure to pay that
exemption, Mr. Monroe alleges, renders "invalid[ ]" Mr. Gagan's May
15, 2007 Marshal's deed.  Id. at 5, ¶ 19.

     Mr. Monroe is seeking two forms of declaratory judgment.
First, he is seeking a declaration that the "Indiana Judgment
against [him], domesticated in Arizona . . . , was not renewed and
expired and was, therefore, of no further force or effect and that
it was, and is, invalid in the State of Arizona [.]"  Id. at 6, ¶
A(1).  Second, he is seeking a declaration that the May 15, 2007,
Marshal's Deed "is void and invalid."  Id. at 6, ¶ A(2).  Citing to
Arizona statutes governing actions to quiet title, Mr. Monroe also

seeks a declaration "establishing [his] estate" in the subject
property, and "barr[ing] and forever estopp[ing]" defendants from
claiming any right or title to that property.  Id. at 6, ¶ B.
Similarly, he seeking a judgment "barring and forever estopping"
defendants from asserting an interest or lien upon the property
which is adverse to his.  Id. at 6, ¶ C.  Plaintiff Monroe Clark
seeks unspecified monetary damages based upon alleged "intentional
wrongful eviction."  Id. at 6, ¶¶ 20 and D.

    Roughly a week after the Monroes filed their state court
action, Mr. Miljenovich filed a separate state court action against
"James L. Gagan and Jane Doe Gagan[.]".  Doc. 26-2.  Mr.
Miljenovich alleges that he and the Gagans are residents of
Maricopa County, Arizona.  Id. at 1-2, ¶¶ 1-2.  He further alleges
that he entered into a contract with the Gagans to purchase the
subject property for $750,000.00.  As that contract required, Mr.
Miljenovich deposited $25,000.00 as earnest money.  In the event
Mr. Miljenovich did not perform under the contract, that $25,000.00
was non-refundable.

    In addition, Mr. Miljenovich alleges that while contracting
with Mr. Gagan to purchase the subject property, Mr. Gagan
"represented to [him] that the Property was free and clear of all
encumbrances except for those listed in the Purchase Contract."
Id. at 3, ¶ 13.  Mr. Miljenovich subsequently learned, however,
that Mr. Monroe has a $150,000.00 homestead exception recorded on
the subject property.  Id. at 3, ¶¶ 14-16.  Because allegedly the
Gagans have refused to pay that exemption, Mr. Miljenovich claims
that he "is unable to complete the purchase of the Property and
obtain title to the Property free and clear of all encumbrances[.]"

1   <u>Id.</u> at 4, ¶ 19.  Given that his "inability to close on the property

2   is a result of the Gagans['] own actions[,]" Mr. Miljenovich claims

3   an "entitle[ment] to the return of his [$25,000.00] earnest money."

4   <u>Id.</u>  Mr. Miljenovich sets forth state law claims for breach of

5   contract; fraud; intentional/negligent misrepresentation; and

6   consumer fraud under ARS § 44-1521 <u>et seq</u>.

7       The state court consolidated the <u>Monroe</u> and <u>Miljenovich</u> actions

8   on October 26, 2007.  Thereafter, Mr. Miljenovich filed a cross-

9   claim against the Gagans on December 6, 2007.  Doc. 11, exh. B

10  thereto (doc. 1-4).  That cross-claim mirrors his complaint in

11  <u>Miljenovich v. Gagan</u>.  Mr. Gagan then removed the matter to this

12  court on January 4, 2008, where it was randomly assigned to the

13  Honorable Earl. H. Carroll.  Primarily for reasons of judicial

14  economy, this court granted Mr. Gagan's motion to transfer that

15  action to the undersigned.  <u>Gagan v. Estate of Sharar</u>, 2008 WL

16  2810978 (D.Ariz. July 18, 2008).  Prior to that transfer,

17  plaintiffs filed this motion to remand (doc. 7), to which Mr.

18  Miljenovich filed a "joinder" (doc. 10), arguing that this court

19  lacks subject matter jurisdiction.  Given that transfer, these

20  remand motions are properly before this court.

21                          ***Discussion***

22  ***I.  Governing Legal Standards***

23      "A defendant may remove an action originally filed in state

24  court only if the case originally could have been filed in federal

25  court."  <u>In re NOS Communications, MDL No. 1357</u>, 495 F.3d 1052,

26  1057 (9th Cir. 2007) (citing 28 U.S.C. § 1441(a), (b)).  Consistent

27  with the foregoing and because "federal courts are court of limited

28  jurisdiction[,]" <u>Vacek v. U.S. Postal Service</u>, 447 F.3d 1248, 1250

1  (9th Cir. 2006) (internal quotation marks and citation omitted),

2  cert. denied, 127 S.Ct. 2122 (2007), "[i]f at any time before final

3  judgment it appears that the district court lacks subject matter

4  jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

5      It is beyond peradventure that "[i]n general, removal statutes

6  are strictly construed against removal."  Luther v. Countrywide

7  Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008)

8  (citing, inter alia, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S.

9  100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)).  Accordingly,

10 "[i]t is to be presumed that a cause lies outside [the] limited

11 jurisdiction [of the federal courts] and the burden of establishing

12 the contrary rests upon the party asserting jurisdiction."  Abrego

13 Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006)

14 (internal quotation marks and citation omitted).  Therefore, "[a]

15 defendant seeking removal has the burden to establish that removal

16 is proper and any doubt is resolved against removability[,]" and,

17 by extension, in favor of remand.  Luther, 533 F.3d at 1034

18 (citation omitted).

19 ## II.  Impact of Consolidation

20     At the outset it is necessary to address the impact of

21 consolidation on the court's jurisdictional analysis.  Despite

22 consolidation, the Monroe action and the Miljenovich action retain

23 their separate identities.  See Continental Airlines v. Goodyear

24 Tire & Rubber Co., 819 F.2d 1519, 1523 n. 1 (9th Cir. 1987) (quoting

25 Johnson v. Manhattan Ry., 289 U.S. 479, 497, 53 S.Ct. 721, 728, 77

26 L.Ed. 1331 (1933)) ("[T]he consolidation of the cases below did not

27 'make those who are parties in one suit parties in another.'")  As

28 one court has so picturesquely put it, "[c]onsolidation is not like

1  a marriage, producing one indissoluble union from two distinct

2  cases." Chaara v. Intel Corp., 410 F.Supp.2d 1080, 1094 (D.N.M.

3  2005), aff'd without pub'd opinion, 245 Fed.Appx. 784 (10th Cir.

4  2007).  "Instead, consolidation is an artificial link formed by a

5  court for the administrative convenience of the parties; it fails

6  to erase the fact that, underneath consolidation's facade, lie two

7  individual cases." Id. (citations omitted).  Given the fundamental

8  nature of consolidation, courts have uniformly held that "[t]here

9  must be *separate jurisdictional bases* for *each action* prior to any

10 consolidation, and *any case lacking* a *separate jurisdictional basis*

11 *must be remanded*." James v. CSX Transportation, Inc., 2007 WL

12 1100503, at *3 (S.D.Ga. April 9, 2007) (citing Johnson, 289 U.S. at

13 496-97, 53 S.Ct. 721); see also Chaara, 410 F.Supp.2d at 1095

14 (treating consolidated actions "[a]s separate actions," so that

15 "each case must satisfy jurisdiction on its own[]") (emphasis

16 added).  This is equally true for cases where diversity is the

17 jurisdictional basis. In re Ibasis, Inc. Deriv. Litig., 551

18 F.Supp.2d 122, 125 (D.Mass. 2008) (citing, *inter alia*, Cella v.

19 Togum Constructeru Ensemleier en Industrie Alimentaire, 173 F.3d

20 909, 913 (3rd Cir. 1999)) ("Courts have recognized that analysis of

21 diversity jurisdiction remains separate for cases even after they

22 have been consolidated.")  Thus, in the present case, the court

23 must "analyze[] the jurisdictional basis of [the Monroe action and

24 the Miljenovich action] independently."[2] See Cella, 173 F.3d at

25 ─────────────────

26      [2]    The fact that these two actions were consolidated in state court, prior
   to removal, does not change the result.  Presumably those actions were consolidated

27 pursuant to ARCP 42(a) which is virtually identical to Fed. R. Civ. P. 42(a).
   "'[B]ecause Arizona has substantially adopted the Federal Rules of Civil Procedure,
   [Arizona courts ] give great weight to the federal interpretation  of the rules.'"

28 Cachet Residential Builders, Inc. v. Gemini Ins. Co., 547 F.Supp.2d 1028, 1030
   (D.Ariz. 2007) (quoting Anserv Ins. Servs., Inc. v. Albrecht, 192 Ariz. 48, 960

1  913 (citing <u>Cole v. Schenley Industries, Inc.</u>, 563 F.2d 35, 38 (2d

2  Cir. 1977)).

3  ### III.  Subject Matter Jurisdiction[3]

4  ### A.  Monroe v. Gagan

5      Defendant Gagan's Notice of Removal identifies what he views

6  as several "uncontested grounds for removal" which alone or

7  together "defeat" remand.  Resp. (doc. 15) at 6.  Defendant argues

8  that there are four possible jurisdictional bases for the <u>Monroe v.</u>

9  <u>Gagan</u> action: (1) diversity of citizenship pursuant to 28 U.S.C. §

10 1332; (2) federal question jurisdiction under 28 U.S.C. § 1331; (3)

11 supplemental jurisdiction under 28 U.S.C. § 1367; and (4) pursuant

12 to 28 U.S.C. § 1442(a)(2), the federal title dispute statute.  The

13

14 ─────────────────

15 P.2d 1159, 1160 (1998)).  The foregoing "strengthen[s] the Court's conclusion that
   [Arizona] courts would not reach a different conclusion under the [Arizona] Rules."
   <u>See</u> <u>Chaara</u>, 410 F.Supp.2d at 1095 (citations omitted).

16     [3]       The court is compelled to comment upon two defects in defendant Gagan's
17 removal.  First, it violates the rule of unanimity which basically requires that
   all served defendants join in a notice of removal.  <u>Vasquez v. North County Transit</u>
18 <u>Dist.</u>, 292 F.3d 1049, 1060 n.5 (9th Cir. 2002) (citation omitted).  Obviously,
   defendant Gagan did not join defendant Miljenovich in his Notice of Removal.  This
   is a procedural defect, however, which is waived where no timely objection is made.
19 <u>Id.</u> (citation omitted).  By filing their motion to remand within 30 days of the
   Notice of Removal, plaintiffs would have been entitled to raise this procedural
20 defect, but they did not.  Hence it is waived.  Defendant Miljenovich likewise
   waived his right to waive this procedural defect because he did not file his motion
21 to remand until February 12, 2008, more than 30 days after the filing of Gagan's
   Notice of Removal.
22     Removal, to the extent it is based upon diversity of citizenship, also is
   defective here because it violates the forum defendant rule.  That rule "confines
23 removal on the basis of diversity jurisdiction to instances where no defendant is
   a citizen of the forum state."  <u>Lively v. Wild Oats Markets, Inc.</u>, 456 F.3d 933,
24 939 (9th Cir. 2006).  Here, according to the Notice of Removal, defendant
   Miljenovich is a citizen of Arizona, the forum state.  Not. of Rem. (doc. 1) at 4,
25 ¶ 9.  Like the unanimity rule, however, the forum defendant rule is procedural.
   <u>Lively</u>, 456 F.3d at 942.  Thus, a violation of that rule "constitutes a waivable
   non-jurisdictional defect subject to the 30-day time limit imposed by § 1447(c)."
26 <u>Id.</u>
       As with the unanimity rule, plaintiffs' timely remand motion is silent as to
27 the forum defendant rule.  Accordingly, they waived the right to object to removal
   on that basis.  And once again, defendant Miljenovich waived his right to raise
28 this procedural defect because he did not file his remand motion within 30 days
   after the filing of the Notice of Removal.

court will address in reverse order whether any of these statutes provide a basis for subject matter jurisdiction in Monroe.

### 1.  Federal Title Dispute

The "rarely invoked" federal title dispute statute, Vanouwerker v. Owens-Corning Fiberglass Corp., 1999 WL 335960, at *13 (E.D.Tex. May 26, 1999), reads in relevant part as follows:

> A civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district . . . embracing the place wherein it is pending:
>
> . . . .
>
> A property holder whose tile is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

28 U.S.C. § 1442(a)(2) (West 2006).  Reliance upon this statute "requires compliance with two prongs[.]" Benitez-Bithorn v. Rossello-Gonzalez, 200 F.Supp.2d 26, 31 (D.P.R. 2002).  First, "the property in controversy must derive from an officer of the United States[.]"  Id.  Second, "the controversy regarding the property must affect the validity of any law of the United States."  Id.

Mr. Gagan contends that Monroe's claims against him satisfy both prongs; hence, this court has subject matter jurisdiction under section 1442(a)(2).  As to the first prong, Gagan asserts that because he obtained the subject property through a sale by the United States Marshal, he is a "property holder whose title derives from an officer of the United States[]" within the meaning of section 1442(a)(2).  The court agrees.  Indeed, in their complaint, the Monroes explicitly allege that the Gagans "claim an interest in and title to the Property[] . . . through . . . a [United States] Marshal's Deed, dated May 15, 2007[.]"  Not. of Rem. (doc. 1), exh.

B thereto (doc. 1-4) at 4, ¶ 13.

Nonetheless, Mr. Gagan cannot satisfy the second prong of section 1442(a)(2). Gagan baldly contends that the Monroes' allegations "affect the validity of a law of the United States" because they are "attack[ing] . . . the Marshal's fulfillment of [his] express statutory duties" under 28 U.S.C. § 566. Not. of Rem. (doc. 1) at 6, ¶ 12.; see also Resp. (doc. 15) at 5-6 (same). That statute delineates the "powers and duties" of the United States Marshal. 28 U.S.C. § 566 (West 2006 & West Supp. 2008). Additionally, Gagan argues that this matter affects the validity of a law of the United States because it "draw[s] into issue the validity of Gagan's federal RICO Judgment as well as the validity of various Orders" by this court in Gagan. Id. at 6, ¶ 12.

Mr. Gagan too broadly construes the second prong of section 1442(a)(2). The Marshal's supposed failure to comply with his duties under federal law does not transform this action into one affecting the validity of a law of the United States. This is not a situation, for example, where the Monroes are arguing that section 566 is constitutionally infirm. Likewise, questioning the validity of a judgment and federal court orders does not transform this into a controversy affecting the validity of any *law* of the United States. See Town of Stratford v. City of Bridgeport, 434 F.Supp. 712, 715 (D.Conn. 1977) (citation omitted) ("None of the provisions of federal law cited in support of [defendant's] removal petition meets the § 1442 standard, since [plaintiff's] suit does not attack the validity of any of them.") In short, reciting that a controversy affects the validity of a law of the United States does not make is so. Because Monroe's claims do not affect the

1  *validity* of any federal law, Gagan improperly relied upon the

2  federal title dispute statue as a basis for removal here.

3  ### *2.  Supplemental Jurisdiction*

4  Defendant Gagan relies upon 28 U.S.C. § 1367(a) as another

5  possible jurisdictional basis.  That statute states in pertinent

6  part as follows:

7          [I]n any civil action of which the district courts
           have original jurisdiction, the district courts shall
8          have supplemental jurisdiction over all other
           claims that are so related to claims in *the action*
9          within such original jurisdiction that they form part
           of the same case or controversy under Article III of the
10         United States Constitution.

11  28 U.S.C. § 1367(a) (West 2006) (emphasis added).  Gagan argues

12  that pursuant to that statute this case is within the court's

13  supplemental jurisdiction in Gagan.  Gagan misconceives the scope

14  of section 1367(a).

15  "Supplemental jurisdiction must be exercised in *the same*

16  *action* that furnishes the basis for exercise of supplemental

17  jurisdiction."  Ortolf v. Silver Bar Mines, 111 F.3d 85, 86 (9th

18  Cir. 1991) (emphasis added).  As the Ninth Circuit explained in

19  Ortolf, "[t]he phrases 'in any civil action' and 'in the

20  action[,]'" as employed in section 1367(a), "require that

21  supplemental jurisdiction be exercised in the *same case*, *not a*

22  *separate or subsequent case*."  Id. (emphasis added).  Thus, Gagan

23  cannot form the basis for the exercise of this court's supplemental

24  jurisdiction in this separate, subsequent action.  See Brummer v.

25  Iasis Healthcare of Arizona, Inc., 2007 WL 2462174, at *1 (D.Ariz.

26  Aug. 24, 2007)(and cases cited therein) (rejecting argument that

27  removal was proper based upon supplemental jurisdiction because the

28  state claims were related to federal claims pending in another

- 11 -

district court); see also In re Enron Corp. Sec., 2002 WL 32107216, at *2 (S.D.Tex. Aug. 12, 2002) (citations omitted) (There can be no supplemental jurisdiction without the existence initially of original subject matter jurisdiction over at least some of the claim in the *same* suit, at the point it is either filed in or removed to federal court.")  Accordingly, Gagan is improperly relying upon section 1367(a) as a basis for removal.

### 3.  Federal Question Jurisdiction

The court will next examine whether Monroe v. Gagan raises a federal question so as to confer jurisdiction upon this court pursuant to 28 U.S.C. § 1331.

### a.  Well-Pleaded Complaint Rule

"'The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists *only* when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" NOS Communications, 495 F.3d at 1047 (emphasis added) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).  "The well-pleaded complaint rule is a 'powerful doctrine [that] severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court[.]'" Lippitt v. Raymond James Financial Services, Inc., 340 F.3d 1033, 1039-40 (9th Cir. 2003) (quoting Franchise Tax Bd. of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).  As the Supreme Court long ago explained:

> whether a case is one arising under the Constitution
> or a law or treaty of the United States . . . must
> be determined from what necessarily appears in the
> plaintiff's statement of his own claim . . . ,

1
2
>            unaided by anything alleged in anticipation of
>            avoidance of defenses which it is thought the
>            defendant might interpose.

3  Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218
4  (1914).   As the foregoing makes clear, the court's first task is
5  to determine whether on its face the Monroe complaint "contains
6  any allegations that would render [their] cause of action one that
7  'arises' under federal law."   See Lippitt, 340 F.3d at 1040
8  (citation omitted).

9       Here, the parties disagree as to which complaint the court
10 should look - the original consolidated state court complaint, or
11 the amended complaint which was filed and served post-removal.   In
12 terms of alleged federal question jurisdiction, the complaints are
13 identical.   Thus, at this juncture, it matters not whether the
14 court focuses on the original Monroe v. Gagan complaint or on the
15 amended complaint.

16      The court hastens to add, however, that in ascertaining
17 federal question jurisdiction, it will not consider defendant
18 Miljenovich's cross-claim.   That pleading does not come into play
19 here because "[r]emoval, . . ., cannot be based on a counter-claim
20 or cross-claim raising a federal question."   Redevelopment Agency
21 of the City of San Bernardino v. Alvarez, 288 F.Supp.2d 1112, 1114
22 (C.D.Cal. 2003) (citation omitted).   Therefore, the court will
23 limit its federal question inquiry to the Monroe plaintiffs'
24 complaint.

25      When it does that, the court easily concludes that on its face
26 the Monroe complaint does not arise under federal law.   Rather,
27 plaintiffs have cast their claims strictly in terms of Arizona
28 state law.   For example, plaintiffs argue, as they have repeatedly

1    in related actions, that the Indiana judgment expired under Arizona

2    law.  Then, even assuming the validity of that judgment, plaintiffs

3    accurately state that the issue of the validity of Gagan's sale of

4    the subject property without paying the Arizona homestead exemption

5    is solely a matter of state law.  Finally, they point out that

6    plaintiff Kimberley Monroe Clark's wrongful eviction claim also is

7    strictly a creature of state law.

8                    ***b.  Artful Pleading Doctrine***

9         Defendant Gagan does not dispute any of the foregoing.

10   Instead, relying exclusively upon Sparta Surgical v. Nat. Ass'n of

11   Sec. Dealers, 159 F.3d 1209 (9th Cir. 1998), he rejoins that

12   plaintiffs are impermissibly omitting the "essentially federal

13   underpinnings of their claims."  Mot. (doc. 15) at 8.  Those

14   essential underpinnings, from defendant Gagan's standpoint, are

15   plaintiffs' "attack[s] . . . [on a] federal Court Judgment[,] . . .

16   numerous federal Court Orders, and the conduct of the United States

17   Marshal[.]" Id. at 7.  Had plaintiffs included the foregoing in

18   their complaint, then federal question jurisdiction is

19   "inevitable[,]" Gagan asserts.  Id. at 8.

20        Plaintiffs counter that their claims do not "arise under"

21   federal law because there are no applicable federal laws at issue,

22   much less "complete preemption" of such laws.  See Reply (doc. 16)

23   at 4-5.  Plaintiffs reiterate that there is no federal question

24   jurisdiction because their right to relief under Arizona State law

25   does not "necessarily depend[] on resolution of a substantial

26   question of federal law." Id. at 4 (internal quotation marks and

27   citations omitted).

28        Although not explicitly, defendant Gagan is invoking the

artful pleading doctrine.  Under that doctrine, a plaintiff "may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim."  Lippitt, 340 F.3d at 1041 (internal quotation marks and citations omitted).  "The artful pleading doctrine allows courts to delve beyond the face fo the state court complaint and find federal question jurisdiction by recharacteriz[ing] a plaintiff's state-law claim as a federal claim."  Id. (internal quotation marks and citations omitted).  The Ninth Circuit has cautioned, however, that "[c]ourts should invoke the doctrine only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results."  Id. (internal quotation marks and citations omitted).

Courts employ the artful pleading doctrine in two situations: (1) complete preemption cases; and (2) substantial federal question cases.  Id. (citations omitted).  Only the latter s a possibility here because this is not a case of complete preemption where a federal statute "provides the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action[.]" See id.  at 1042 (internal quotation marks and citations omitted) (emphasis omitted). And, indeed, Gagan is not making this argument.

Mindful, as the Lippitt Court put it, that the court is "treading in a doctrinal minefield," it must next determine whether plaintiffs' complaint raises a substantial federal question.  See id.  at 1041.  If plaintiffs' state law claims "implicate a substantial federal question[,]" then this federal court may retain jurisdiction over such claims.  See id. at 1042.  A substantial

federal question exists where "a substantial, disputed question of federal law is a *necessary* element of . . . the well-pleaded state claim[.]" Id. (internal quotation marks and citation omitted) (emphasis in original).  Or, a substantial federal question can exist where "the right to relief depends on the resolution of a substantial, disputed federal question[.]" Id. (internal quotation marks and citation omitted).  Neither exists here; and, tellingly, defendant Gagan did not address either of these possibilities in his motion.

Federal law is not intrinsic to any of plaintiffs' claims. Clearly federal law is not a necessary "element" of plaintiffs' claim that the Indiana judgment expired under Arizona state law. While defendant Gagan may intend to rely upon the preclusive effect of this court's judgment in Gagan or orders issued in connection therewith, or both, such reliance does not transform this otherwise state law claim into one arising under federal law.  See Lighting Science Group Corp. v. Koninklijke Philips Electronics N.V., 2008 WL 2917602, at *5 n.1 (E.D.Cal. June 3, 2008) (citing Metcalf v. City of Watertown, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543 (1888)) ("That a defense may implicate federal law does not suffice to confer jurisdiction to the court.") Nor is federal law a "necessary element" of plaintiffs' claim that Gagan purportedly failed to comply with Arizona's statutory homestead exemption.  Likewise, plainly, federal law is not an element of plaintiff Kimberley Monroe Clark's Arizona state law claim for wrongful eviction.

Sparta, the sole basis for Gagan's argument that this court has federal question jurisdiction is readily distinguishable, and hence does not compel a different result here.  In Sparta, although

- 16 -

plaintiffs' claims were "carefully articulated in terms of state law," the Ninth Circuit held that the district court had subject matter jurisdiction because those claims were predicated upon a violation of federal securities law.  <u>Sparta</u>, 159 F.3d at 1212 (internal quotation marks and citation omitted).  A similar federal law predicate is conspicuously absent from plaintiffs' claims. Thus, notwithstanding defendant Gagan's depiction of plaintiffs' claims, those claims are not federal claims disguised as state law causes of action.  Consequently, Gagan cannot rely upon section 1331 - the federal question statute - as a jurisdictional basis for removal.  Having found that there is no federal question jurisdiction as to  Mr. Monroe's claims, Gagan's assertion that 28 U.S.C. § 1441(c)[4] provides a jurisdictional basis for the claims of Ms. Monroe Clark is unavailing.

### 4.  Diversity Jurisdiction

The only remaining possible basis for jurisdiction here is 28 U.S.C. § 1332.  That statute provides in relevant part that district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... *citizens* of different States[.]" 28 U.S.C. 1332(a)(1) (West 2006) (emphasis added).  To establish federal jurisdiction under that

---

[4]      That statute provides in relevant part:

    Whenever a separate and independent claim or cause
    of action within the jurisdiction conferred by section
    1331 of this title is joined with one or more other non-removable
    claims or causes of action, the entire case may be removed
    and the district court may determine all issues therein[.]

28 U.S.C. § 1441(c) (West 2006).

statute, two requirements must be met.  First, "*each* defendant
[must be] a citizen of a different state from *each* plaintiff."
Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct.
2396, 57 L.Ed.2d 274 (1978) (emphasis in original).  Second, the
complaint must include allegations that the amount in controversy
"exceeds" $75,000.00.  28 U.S.C. § 1332(a).

For removal purposes, diversity "is determined (and must
exist) as of the time the complaint is filed and removal is
effected."  Stroter Corp. v. Air Transport Ass'n. of America, 300
F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).  "A party
invoking diversity jurisdiction must allege the actual citizenship
of the relevant parties and the existence of complete diversity
must be confirmable."  Kanaan v. Freescale Semiconductor, Inc.,
2007 WL 420241, at *2 (N.D.Cal. Feb. 5, 2007) (citing Kanter v.
Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001)).  Defendant
Gagan's Notice of Removal is facially deficient because, as
explained below, he does not "show . . . affirmatively and
distinctly, the existence of what is essential to federal
[diversity] jurisdiction" – complete diversity of citizenship.  See
Smith v. McCullough, 270 U.S. 456, 459, 46 S.Ct. 338, 339 (1926).

In his Notice of Removal, Gagan indicates that when this
action was originally filed in state court, plaintiff James A.
Monroe "was a citizen of the State of Texas."  Not. of Rem. (doc.
1) at 7, ¶ 13 (citation omitted).  To support this statement, Gagan
cites to a "Notice of Change of Address" which Mr. Monroe filed in
Gagan (doc. 346), on April 10, 2007, roughly four months prior to
the commencement of his state court action.  In that Notice, Mr.
Monroe lists his "new mailing address" as follows:

1

Salt River Cablevision
San Carlos Cablevision
James A. Monroe,
P.O. Box 461264
Garland, TX 75046-1264

2

3

4   Gagan (doc. 346) at 1.

5       Gagan's Notice of Removal further states that he is a citizen

6   of Indiana, whereas Mr. Miljenovich is a citizen of Arizona.  Not.

7   of Rem. (doc. 1) at 7, ¶ 13.  Then, although there is no mention of

8   Ms. Monroe Clark's citizenship in his Notice of Removal, Gagan

9   urges the court to "disregard" her citizenship.  Id.  Gagan reasons

10  that the court should disregard her citizenship because supposedly

11  she was "fraudulently joined as a plaintiff[]" in that her wrongful

12  eviction claim is barred by res judicata or waiver.   Id.

13      There is no need to determine whether or not Ms. Clark was

14  fraudulently joined at this point.  Likewise, there is no need to

15  become mired down in whether, as Gagan also contends, Mr. Monroe

16  has made a "transparent attempt to defeat diversity by changing his

17  citizenship" from Texas to Arizona in his amended complaint,[5] which

18  was filed after removal.  See Resp. (doc. 15) at 10.  Delving into

19  those issues now is not necessary because Gagan's Notice of Removal

20  is deficient in that the existence of complete diversity is not

21  confirmable given the lack of any affirmative statement as to the

22  citizenship of Ms. Monroe Clark.  See Kanter, 265 F.3d at 857-58

23

24       [5]   It is impossible to ascertain whether or not there is complete
    diversity of citizenship from either the original Monroe v. Gagan complaint or from
25  the amended complaint in this removed action.  As to the former, there are
    allegations as to the parties' residences, but not as to their citizenship
26  (although it is alleged that Mr. Monroe is domiciled in Texas).  Allegations of
    residency are do not suffice to show diversity jurisdiction though because section
    1332 "speaks of citizenship, not of residency[.]" See Kanter v. Warner-Lambert Co.,
27  265 F.3d 853, 857-58 (9th Cir. 2001).  Similarly, while the amended complaint
    alleges that both of the Monroe plaintiffs are Arizona citizens, it does not allege
28  the citizenship of Messrs. Gagan and Miljenovich.  It only alleges their place of
    residence.  Thus, there is no way of knowing from the face of that complaint
    whether there is complete diversity of citizenship.

- 19 -

1   (citation omitted) (because "neither Plaintiffs' complaint nor
2   [defendant's] notice of removal made any allegation regarding
3   Plaintiffs' state citizenship[,]" and "[s]ince the party asserting
4   diversity bears the burden of proof, . . , [defendant's] failure
5   to specify Plaintiff' state citizenship was fatal to [the]
6   assertion of diversity jurisdiction[]").

7       Further frustrating the diversity inquiry is the fact that
8   Gagan's claim that Mr. Monroe is a Texas citizen is based upon a
9   change of address form which on its face lists what appear to be
10  the name of two businesses, as well as a post office box in Texas.
11  However, "[c]hanging the location of one's residence or work does
12  not necessarily result in a change of domicile." Franco v. Empire
13  Southwest Holdings, Inc., 2007 WL 951841, at *3 (S.D.Cal. March 12,
14  2007). Therefore, Mr. Monroe's citizenship likewise is not
15  "affirmatively and distinctly" shown on the face of Gagan's Notice
16  of Removal. See McCullough, 270 U.S. at 459, 46 S.Ct. 338. In
17  short, on the record as presently constituted, defendant Gagan has
18  not overcome the "strong presumption" against removability. See
19  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

20      At the same time, however, because these citizenship
21  allegations could potentially be cured, in accordance with 28
22  U.S.C. § 1653, the court will allow defendant Gagan fifteen (15)
23  days from the date hereof in which to cure these pleading
24  deficiencies. The court will proceed in that way because "[a]n
25  inadequate pleading does not in itself constitute an actual defect
26  of federal jurisdiction." Kanter, 265 F.3d at 858 (internal
27  quotation marks and citation omitted). Failure to timely comply
28  with this order shall result in remand of this action for lack of

subject matter jurisdiction without further notice.

### B.  Miljenovich v. Gagan

The court is now free to turn to the issue of whether, as Mr. Miljenovich argues, it must remand his action because there is neither diversity jurisdiction under § 1332, nor federal question jurisdiction under § 1331.  Gagan responds that "Miljenovich's case is properly removed . . . on diversity grounds *alone*."  Resp. (doc. 15) at 4 (emphasis added).  Because that is the only jurisdictional basis which Gagan, the removing party, is asserting, the court will limit its analysis accordingly.

### 1.  Diversity Jurisdiction

As just discussed, to establish federal jurisdiction under section 1322(a)(1), two requirements must be met.  First, "*each* defendant [must be] a citizen of a different state from *each* plaintiff."  Owen Equip., 437 U.S. at 373, 98 S.Ct. 2396 (emphasis in original).  Second, the complaint must include allegations that the amount in controversy "exceeds" $75,000.00.  28 U.S.C. § 1332(a)(1).

### a.  Citizenship

Mr. Miljenovich contends that due to the "alignment of the parties[,]" diversity jurisdiction is not extant.  Mot. (doc. 10) at 3:3.  In making this argument, Mr. Miljenovich improperly takes into account the citizenship of Mr. Monroe.  In particular, Mr. Miljenovich believes that like himself Mr. Monroe is an Arizona citizen, thus destroying diversity.  As previously explained though, irrespective of consolidation, the Miljenovich action is separate and distinct from the Monroe action.  Hence, as Mr. Monroe is not a party in the Miljenovich action, his citizenship has no

1   bearing on the issue of existence of diversity jurisdiction in that
2   action.

3        Gagan responds that he is an Indiana citizen and Miljenovich
4   is an Arizona citizen.  Gagan accurately states that in accordance
5   with section 1441(a), the court must disregard the citizenship of
6   defendants sued under fictitious names.[6]  When that is done, Gagan
7   validly asserts that, as the notice of removal shows, there is
8   complete diversity between plaintiff Miljenovich and defendant
9   Gagan.

10                    ***b.   Amount in Controversy***

11       Evidently confident that he would prevail on his lack of
12  diversity of citizenship argument, Miljenovich did not address the
13  second element of section 1332 jurisdiction - the amount in
14  controversy.  Because there cannot be diversity under that statute
15  without satisfying the amount in controversy set forth therein, the
16  court must next address that element.

17       As defendant Gagan interprets Mr. Miljenovich's action, he is
18  refusing to perform the contract, which he had with Mr. Gagan, to
19  purchase the subject property for $750,000.00 "until a $150,000
20  homestead claim by Monroe has been resolved."  Resp. (doc. 15) at 4
21  (citation omitted); see also Not. of Removal (doc. 1) at 5, ¶ 9.
22  Relying solely upon those allegations, in his Notice of Removal and
23  in his response to these remand motions, Gagan contends that the
24  amount in controversy exceeds the $75,000.00 statutory minimum,
25  thereby conferring original jurisdiction on this court pursuant to
26  section 1332(a).

27  _____

28        [6]     That section provides in relevant part that "[f]or purposes of removal
        . . . , the citizenship of defendants sued under fictitious names *shall* be
        disregarded."  28 U.S.C. § 1441(a) (emphasis added) (West 2006).

1    Carefully parsing the <u>Miljenovich</u> complaint reveals that in
2  his prayers for relief, despite Gagan's contrary suggestion, there
3  are no specific allegations of an amount in controversy.  At one
4  point, Mr. Miljenovich alleges that he is "entitled to the return
5  of his earnest money" from Mr. Gagan.  Not. of Removal (doc. 1),
6  exh. B thereto (doc. 1-4) at 21, ¶ 20.  Earlier he alleges that in
7  accordance with the terms of the purchase contract, he deposited
8  $25,000.00 in earnest money, which is non-refundable in the event
9  he breaches that contract.  <u>Id.</u> at 19-20, ¶¶ 10 and 11.  Throughout
10 the remainder of his complaint, Mr. Miljenovich seeks unspecified
11 damages in varying forms, *i.e.* "compensatory[,]" "actual[,]"
12 "consequential[,]" and "punitive[.]" <u>See</u>, <u>e.g.</u>, Not. of Removal
13 (doc. 1), exh. B thereto (doc. 1-4) at 21; and at 23, ¶¶ (B)-(C).
14 He also is seeking statutory attorneys' fees in an unspecified
15 amount, as well as pre-judgment and post-judgment interest "at the
16 maximum legal rate[.]" <u>Id.</u> at 22, ¶ (C).
17    Mr. Miljenovich's complaint can easily be read to support a
18 finding that he is seeking at least $25,000.00 in damages – the
19 amount of the purportedly non-refundable earnest money deposit.
20 Obviously, that $25,000.00 falls far short of the $75,000.00
21 statutory minimum.  As a general proposition, "[t]he amount-in-
22 controversy requirement may be satisfied by claims of general and
23 specific damages, punitive damages, and attorney's fees (if
24 authorized by statute or contract." <u>Colvin</u>, 2007 WL 3306746 at *2
25 (citing, *inter alia*, <u>Kroske v. U.S. Bank Corp.</u>, 432 F.3d 976, 980
26 (9th Cir. 2005)).  Given the lack of specificity in the <u>Miljenovich</u>
27 complaint, however, defendant Gagan cannot avail himself of such
28 damage claims to meet the statutory threshold of $75,000.00.

1    First, because section 1332(a) specifically excludes interest

2  from the amount in controversy, the court declines to consider any

3  possible interest award in deciding whether the amount in

4  controversy is met here.  See Home Buyers Warranty Corp. v.

5  Leighty, 2007 WL 4616687, at *7 (D.Ariz. Dec. 28, 2007) (declining

6  to take into account claimed statutory interest due to § 1332(a)'s

7  exclusion of interest from the amount in controversy calculation).

8  Second, as this court thoroughly explained in Leighty, "the mere

9  possibility of a punitive damage award is insufficient to prove

10  that the amount in controversy requirement has been met[.]"  Id. at

11  *8 (internal quotation marks and citation omitted).  Third, as in

12  Leighty, the court will not include attorneys' fees in determining

13  the amount in controversy here because it would be speculative

14  given the complaint's silence as to the amount of any such award.

15  See id. (citing cases).

16    As the foregoing shows, because the Miljenovich complaint is

17  "unclear or fails to specify a total amount in controversy[,]" it

18  is not apparent on the face of that complaint that the amount in

19  controversy is above $75,000.00.  See Colvin v. Conagra Foods,

20  Inc., 2007 WL 3306746, at *2 (W.D.Wash. Nov. 5, 2007) (citing

21  Guglielmino v. McKee Foods Corp., 506 F.3d 696(9th Cir. 2007)).

22  Therefore, as the removing defendant, Mr. Gagan has the burden of

23  "establishing, by a preponderance of the evidence, that the amount

24  in controversy requirement has been met."  Id.   Gagan has not met

25  that burden, however.  At most his Notice of Removal contains

26  "conclusory allegations" as to the amount in controversy.  See

27  Albano v. Shea Homes Ltd. Partnership, 2008 WL 2941279, at *3

28  (D.Ariz. July 25, 2008) (citing Singer v. State Farm Mut. Auto.

- 24 -

Ins. Co., 116 F.3d 373, 376 (9ᵗʰ Cir. 1997)).  Mr. Gagan has not, as he "must[,] provide[d] some facts to support [hi]s claim that the amount in controversy requirement is satisfied." See id.  Stated somewhat differently, Gagan has not met his burden of establishing by a preponderance of the evidence "that it is more likely than not that the amount in controversy exceeds that [$75,00.00] amount." Guglielmino, 506 F.3d at 699 (internal quotation marks and citation omitted).  Thus, because defendant Gagan has not met his burden of proof in terms of satisfying the amount in controversy requirement in the Miljenovich action, jurisdiction over this action is not, as Gagan believes "obvious[.]" Mot. (Doc. 15) at 4.

### 2.  Supplemental Jurisdiction

Even though the diversity statute cannot provide a basis for jurisdiction over the Miljenovich action, that does not necessarily mean that jurisdiction is lacking.  If ultimately the court finds that it has jurisdiction over the Monroe action, then it will exercise supplemental jurisdiction over the Miljenovich action in accordance with 28 U.S.C. § 1367.  The exercise of such jurisdiction would be proper if the court has jurisdiction over the Monroe action because Miljenovich is part of "the same case or controversy" as the Monroe action.  By the same token, though, if the court eventually determines that it lacks subject matter jurisdiction over Monroe, clearly the exercise of supplemental jurisdiction over Miljenovich would be improper.  Accordingly, the court conditionally denies defendant Miljenovich's motion to remand.  However, if defendant Gagan fails to file an amended Notice of Removal within fifteen (15) days from the date of entry of this order, then the court will remand the Miljenovich action to

Arizona Superior Court, Maricopa County without further notice.

For all of these reasons, the court hereby ORDERS that:

(1) plaintiffs' motion to remand (doc. 7) is DENIED without prejudice;

(2) defendant Ross Miljenovich's motion to remand (doc. 10) is DENIED on the condition that defendant James L. Gagan files an amended Notice of Removal within fifteen (15) days of the date hereof; if defendant Gagan does not timely file such notice, the court will GRANT defendant Ross Miljenovich's motion to remand for lack of subject matter jurisdiction; and

(3) defendant James L. Gagan has fifteen (15) days from the date of entry of this order in which to file an amended Notice of Removal.  Failure to comply with this order shall result in the remand of <u>Monroe v. Gagan</u> without further notice for lack of subject matter jurisdiction.

DATED this <u>29th</u> day of September, 2008.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record